PP:LS
F. #2024R00676

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – –X

UNITED STATES OF AMERICA

No. 24-CR-401 (JPC)

- against -

KENNETH J. WARD, JR.,

Defendant.

– – – – – – – – – – – – – – – – –X

THE GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF THE
GOVERNMENT'S MOTIONS IN LIMINE

JOHN J. DURHAM
UNITED STATES ATTORNEY
Eastern District of New York
271-A Cadman Plaza East
Brooklyn, New York 11201

Leonid Sandlar
Trial Attorney
    (Of Counsel)

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................... 1

FACTUAL BACKGROUND .................................................................................................... 1

STATUTORY BACKGROUND ................................................................................................. 4

ARGUMENT ........................................................................................................................ 4

    I.    The Court Should Admit Certain Evidence as Direct Evidence, or in the Alternative, Pursuant to Rule 404(b) ...................................................................................................... 4

        A.    Legal Standard ...................................................................................................... 4

        B.    Testimony Regarding the Defendant's Civil Case Is Admissible as Direct Evidence of the Underlying Crime ...................................................................................................... 6

        C.    Testimony Regarding the Violent Threat at the Origin of the Defendant's Civil Case Is Admissible as Direct Evidence ...................................................................................... 7

        D.    The Court Should Admit Testimony Relating to Law Enforcement Reaction to The Defendant's Threat ...................................................................................................... 9

        E.    The Court Should Admit Testimony of the Victim Regarding Her Fear of Civil Plaintiffs ...................................................................................................................... 12

    II.    The Defendant Should Be Precluded from Introducing Evidence or Arguing that He Did Not Intend to Carry Out His Threats ...................................................................................... 13

    III.    The Defendant Should Be Precluded from Introducing Evidence or Arguing that He is Peaceful or Lacks Violent Tendencies ...................................................................................... 14

    IV.    The Court Should Preclude the Defendant from Presenting Evidence or Arguing About His Purported First Amendment Right to Make Threats ........................................................ 15

    V.    The Court Should Preclude Evidence and Argument Concerning Health, Illness, or Misfortune ........................................................................................................................ 16

    VI.    The Court Should Preclude Evidence and Argument Concerning the Defendant's Possible Punishment ............................................................................................................ 17

CONCLUSION ..................................................................................................................... 18

TABLE OF AUTHORITIES

**Cases**

Counterman v. Colorado,
    600 U.S. 66 (2023)……………………………………………………………4, 15

Huddleston v. United States,
    485 U.S. 681 (1988)…………………………………………………………….6

Shannon v. United States,
    512 U.S. 573 (1994)…………………………………………………………...17

United States v. Blume,
    967 F.2d 45 (2d Cir. 1992)…………………………………………………….17

United States v. Bright,
    No. 20-3792, 2022 WL 53621 (2d Cir. Jan. 6, 2022)…………………………..6

United States v. Carboni,
    204 F.3d 39 (2d Cir. 2000)…………………………………………………...5

United States v. Carrier,
    672 F.2d 300 (2d Cir. 1982)………………………………………………….7

United States v. Crumble,
    No. 18-CR-32 (ARR), 2018 WL 2016852 (E.D.N.Y. May 1, 2018)…………………………..5

United States v. D'Amario,
    No. CRIM. 06-112, 2007 WL 928473 (D.N.J. Mar. 26, 2007)………………………………10

United States v. Davila,
    461 F.3d 298 (2d Cir. 2006)……………………………………………….......8, 10

United States v. Downing,
    297 F.3d 52 (2d Cir. 2002)………………………………………………….. 6

United States v. Garnes,
    102 F.4th 628 (2d Cir. 2024)………………………………………………4, 8, 15

United States v. Gonzalez,
    110 F.3d 936 (2d Cir. 1997)………………………………………………….6

United States v. Gordon,
    987 F.2d 902 (2d Cir. 1993)………………………………………………...9, 11

United States v. Hsu,
    669 F.3d 112 (2d Cir. 2012)………………………………………………….5

United States v. Hunt,
    534 F. Supp. 3d 233 (E.D.N.Y. 2021)…………………………………………7, 10, 14

United States v. Hunt,
    82 F.4th 129 (2d Cir. 2023)………………………………………………….. 4

United States v. Inserra,
    34 F.3d 83 (2d Cir. 1994)…………………………………………………….5

United States v. Krug,
    No. 1:15-CR-00157 RJA, 2019 WL 336568 (W.D.N.Y. Jan. 28, 2019)………………………...14

United States v. Linehan,
    835 F. App'x 914 (9th Cir. 2020)…………………………………………… 8

United States v. Malik,
    16 F.3d 45 (2d Cir. 1994)…………………………………………………...12

United States v. McCain,
   No. 21-2982, 2023 WL 2335332 (2d Cir. Mar. 3, 2023)………………………………..11
United States v. McCrudden,
   No. CR-11-061 DRH, 2015 WL 1198544 (E.D.N.Y. Mar. 16, 2015)……………………8, 12
United States v. Miller,
   641 F. Supp. 2d 161 (E.D.N.Y. 2009)………………………………………………...16
United States v. Robinson,
   702 F.3d 22 (2d Cir. 2012)……………………………………………………………5, 6
United States v. Roldan-Zapata,
   916 F.2d 795 (2d Cir. 1990)……………………………………………………………9, 11
United States v. Rutkoske,
   506 F.3d 170 (2d Cir. 2007)……………………………………………………………6
United States v. Saint Clair,
   No. 22-2100, 2024 WL 413422 (2d Cir. Feb. 5, 2024)………………………………...5
United States v. Segui,
   No. 19-CR-188 (KAM), 2019 WL 8587291 (E.D.N.Y. Dec. 2, 2019)………………………15
United States v. Sterritt,
   No. 21-CR-193, 2023 WL 7386660 (E.D.N.Y. Nov. 8, 2023)………………………………16
United States v. Turner,
   720 F.3d 411 (2d Cir. 2013) ……………………………………………………12, 13, 17
United States v. Washington,
   No. 21-CR-603, 2023 WL 6219203 (S.D.N.Y. Sept. 22, 2023)………………………………16
United States v. Zackson,
   12 F.3d 1178 (2d Cir. 1993)………………………………………………………………11
Ward v. New York State et al,
   Case No. 15-cv-05316 (CBA) (E.D.N.Y.)…………………………………………………...2, 3

**Statutes**

18 U.S.C. § 115(a)(1)(B)……………………………………………………... . 4, 7

**Rules**

Fed. R. Evid. 401……………………………………………………………... ... 4, 13, 14, 17
Fed. R. Evid. 403……………………………………………………………... ... 5, 13, 14, 15
Fed. R. Evid. 404(b) ………………………………………………………………............... 5, 9

**Other Authorities**

Leonard B. Sand et al., 1 Modern Federal Jury Instructions – Criminal (2024)
   ¶ 14.02, Instr. 14-13…………………………………………………………... ................. 4

## PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in support of its

motions in limine in advance of the jury trial in this matter.  The defendant, Kenneth J. Ward, Jr.,

is charged with threatening to assault and murder a federal judge.  The government respectfully

requests that the Court:

1) permit the government to admit certain evidence as direct evidence of the charged crime or, in the alternative, pursuant to Federal Rule of Evidence 404(b);

2) preclude the defendant from introducing evidence or arguing that he did not intend to carry out his threats;

3) preclude the defendant from introducing evidence or arguing that he is peaceful or lacks violent tendencies;

4) preclude the defendant from making arguments about a purported First Amendment right to make threats;

5) preclude evidence or argument regarding health, illness, or other misfortune; and

6) preclude evidence or argument regarding any punishment that the defendant may face upon conviction.

For the reasons set forth herein, the government's motions in limine should be granted.

## FACTUAL BACKGROUND

The defendant is charged with threatening to assault and murder a federal judge in

violation of Title 18, United States Code, Section 115.  ECF No. 13.  The government expects to

establish the following facts at trial:[1]

The charge arises from the defendant's threat to choke a United States District

Judge "to death," which the defendant made at a telephonic final pretrial status conference in his

pro se civil action.  This civil suit, which Ward filed on September 2, 2015, arose from his

involuntary commitment at Nassau County University Medical Center ("NUMC") in July 2015.

---

[1] The proffer of facts set forth herein is not a complete statement of all facts and evidence of which the government is aware or will seek to introduce at trial.

1

See generally Ward v. New York State et al, Case No. 15-cv-05316 (CBA) (E.D.N.Y.) (the "Civil Case").  Ward was committed after he made threats to kill judges during a visit to the Department of Veteran Affairs (the "VA") in Hicksville, New York.  Civil Case ECF No. 120 at 1-2.  In his Amended Complaint, Ward asserted claims under 42 U.S.C. § 1983 and New York State law against over a dozen defendants.  Civil Case ECF No. 6.

Ward's Civil Case was assigned to a United States District Judge (the "District Judge").  On May 18, 2016, the District Judge dismissed numerous defendants but permitted claims to proceed against NUMC medical personnel and Nassau County police officers.  See Civil Case ECF No. 7.  On September 30, 2019, ruling on the parties' cross-motions for summary judgment, the District Judge dismissed most remaining defendants, including the NUMC and the NUMC physicians involved in evaluating Ward.  See Civil Case ECF No. 120.  A single Fourth Amendment claim against a single Nassau County police officer survived summary judgment.  See Civil Case ECF No. 128 at 8.  On December 7, 2022, the parties consented to proceed to trial before the assigned United States Magistrate Judge (the "Magistrate Judge") on the sole remaining claim.  See Civil Case ECF No. 165.

On July 15, 2024, the parties met by conference call for a final pretrial conference before the Magistrate Judge (the "Final Pretrial Conference").  See Civil Case ECF No. 182.  During that conference, Ward demanded a settlement from the sole remaining defendant and insisted that, absent a settlement, he would call the dismissed defendants, including the NUMC physicians, as witnesses at trial.  Civil Case ECF No. 183 at 20.  When Ward was advised repeatedly that his trial would be focused on the sole Fourth Amendment claim that had survived summary judgment, id., Ward became agitated and angry.  At several points in the telephonic conference, Ward alleged that the District Judge was "corrupt" because "none of those claims

should have been dismissed." Id. at 4, 8.  Exclaiming that it was "bullshit" that "this fucking . . . woman who fuckin let these people off," Ward shouted that "those doctors and that fucking judge, [the District Judge's first name] whatever the fuck her name is, can go fuck herself. All right? And if I ever see her again, I'm going to choke her to death. And that's on the fucking – that's on the record." Id. at 22-23.

Later the same day, the threat against the District Judge was referred to the United States Marshals Service ("USMS") for investigation.  The defendant's statements at the Final Pretrial Conference were also communicated to the District Judge, who interpreted them as a serious threat.

Subsequently, USMS took several steps to investigate the defendant's threat and to assure the safety of the District Judge.  The investigation included, among other things, a review of the defendant's criminal history, law enforcement databases, and public sources.  This review alerted the USMS to the defendant's prior threat in 2014, following an adverse ruling in his pro se federal appeal, to "get into a van and run over" personnel of the Court of Appeals for the Second Circuit.  The USMS also learned of the defendant's arrest in 2023 following a violent road rage incident in which the defendant threatened to "kill" another motorist and stabbed the other driver in the arm.  The evidence will show that in view of this history and characteristics, USMS believed that the defendant posed an actual threat to the District Judge that needed to be mitigated.  Among other steps, the USMS distributed a warning poster at the federal courthouse in Brooklyn, New York that included the defendant's photograph and instructions to notify the USMS if the defendant was observed on the premises.  The USMS also temporarily enhanced the District Judge's security.

On August 22, 2024, the defendant was arrested at his home on a complaint charging him with violating Title 18, United States Code, Section 115(a)(1)(B).  During the arrest, the officers observed a handgun in their plain view in the defendant's apartment.  Accordingly, the defendant was indicted on a state felony charge of criminal possession of a firearm.  A federal grand jury returned an Indictment on October 2, 2024, charging the defendant with violating Title 18, United States Code, Section 115(a)(1)(B).

## STATUTORY BACKGROUND

The defendant is charged with threatening to assault and murder a federal judge in violation of Title 18, United States Code, Section 115.  Under Section 115, the government must prove that: (1) the defendant knowingly made a threat to assault or murder a United States judge; (2) that when the defendant made the threat, he acted recklessly as to the threatening nature of his statement; and (3) he made that threat with either the intent to impede, intimidate, or interfere with such United States judge while she was engaged in the performance of official duties or with the intent to retaliate against the judge on account of the performance of official duties.  See 18 U.S.C. § 115(a)(1)(B); United States v. Garnes, 102 F.4th 628, 636-37 (2d Cir. 2024) (citing Counterman v. Colorado, 600 U.S. 66, 69 (2023)); see also United States v. Hunt, 82 F.4th 129, 134-35 (2d Cir. 2023) (same); Leonard B. Sand et al., 1 Modern Federal Jury Instructions – Criminal (2024) ¶ 14.02, Instr. 14-13.

## ARGUMENT

I.    The Court Should Admit Certain Evidence as Direct Evidence, or in the Alternative, Pursuant to Rule 404(b)

A.    Legal Standard

Under Rule 401 of the Federal Rules of Evidence, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and

(b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.  It is well-established that evidence of other crimes, wrongs, or acts is admissible as direct evidence where it: (i) arises "out of the same transaction or series of transactions as the charged offense," or (ii) is "inextricably intertwined with the evidence regarding the charged offense," or (iii) "is necessary to complete the story of the crime on trial."  See, e.g., United States v. Robinson, 702 F.3d 22, 37 (2d Cir. 2012) (quoting United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000)); see also United States v. Inserra, 34 F.3d 83, 89 (2d Cir. 1994) (noting that evidence of other acts may be admitted "to provide the jury with the complete story of the crimes charged by demonstrating the context of certain events relevant to the charged offense").

Such categories of direct evidence may be excluded under Federal Rule of Evidence 403 when its probative value is "substantially outweigh[ed]" by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.  Fed. R. Evid. 403; see also United States v. Crumble, No. 18-CR-32 (ARR), 2018 WL 2016852, at *2 (E.D.N.Y. May 1, 2018) (citing United States v. Hsu, 669 F.3d 112, 119 (2d Cir. 2012)).

Alternatively, evidence of other crimes, wrongs, and acts, while not admissible to prove criminal propensity, is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b).[2]  The Second Circuit evaluates such evidence under an "inclusionary approach" that allows evidence of "other acts" for any purpose other than to show a defendant's propensity to commit a crime.  United States v. Saint Clair, No. 22-2100, 2024 WL 413422, at *5 (2d Cir. Feb. 5, 2024).

---

[2] On January 17, 2025, the government notified the defendant of certain categories of evidence that it would seek to admit at trial as direct evidence of the charged crime or pursuant to Federal Rule of Criminal Procedure 404(b).

To be admissible under Rule 404(b), evidence of prior bad acts must be "(1) 'introduced for a proper purpose,' (2) 'relevant to the charged offense,' (3) not substantially more prejudicial than probative, and (4) 'admitted with a limiting instruction if requested.'" United States v. Bright, No. 20-3792, 2022 WL 53621, at *2 (2d Cir. Jan. 6, 2022) (quoting United States v. Rutkoske, 506 F.3d 170, 177 (2d Cir. 2007)); see also United States v. Downing, 297 F.3d 52, 58 (2d Cir. 2002) (citing Huddleston v. United States, 485 U.S. 681, 691-92 (1988)).

B. <u>Testimony Regarding the Defendant's Civil Case Is Admissible as Direct Evidence of the Underlying Crime</u>

The government seeks to offer information concerning the Civil Case to provide the necessary background and context for the Final Pretrial Conference in which the defendant made the charged threat. Specifically, the government intends to offer testimony and exhibits concerning the general nature of the defendant's Civil Case and certain relevant procedural history. The latter includes the assignment of the District Judge, the District Judge's dispositive rulings (Civil Case ECF Nos. 7, 120), and the later assignment of the case to the Magistrate Judge (Civil Case ECF No. 165). The government also seeks to offer the audio recording and the official transcript of the Final Pretrial Conference (Civil Case ECF No. 182), in which the defendant made the threat to choke the District Judge to death.

This information constitutes direct evidence of the charged crime because it is "necessary to complete the story of the crime [on] trial," Robinson, 702 F.3d at 37, and to provide "coherence to the basic sequence of events that occurred" leading up to the Final Pretrial Conference. See United States v. Gonzalez, 110 F.3d 936, 942 (2d Cir. 1997). At minimum, that "sequence of events"—including the District Judge's ruling dismissing the NUMC physicians—is necessary for the jury to make sense of the discussion among the Magistrate Judge, the defendant, and opposing counsel at the Final Pretrial Conference in which the

defendant made the charged threat.  Testimony or evidence concerning that discussion—e.g., that

the trial would be focused on the sole remaining claim because all other claims had been

dismissed—is necessary to understand the defendant's expression of frustration that are

inextricably intertwined with the threat (e.g., "she should never [have] let those doctors out").

The jury is entitled to this context in order to determine whether the defendant's threat to choke

the "corrupt" District Judge after she "fuckin let these people off" evidences the requisite intent

to retaliate against her "on account of the performance of official duties."  See 18 U.S.C.

§ 115(a)(1)(B); see also United States v. Hunt, 534 F. Supp. 3d 233, 252 (E.D.N.Y. 2021)

(section 115 "focuses on particular statements by the Defendant and his intent in making those

statements, including the context in which the statements were made"); see also United States v.

Carrier, 672 F.2d 300, 306 (2d Cir. 1982) (in a threats case, a jury must consider "the context in

which the words were spoken").  In short, because evidence concerning the underlying Civil

Case is highly relevant to understanding why the defendant made the threat, it should be

admitted.

        C.        Testimony Regarding the Violent Threat at the Origin of the Defendant's Civil
                Case Is Admissible as Direct Evidence

        The government also seeks to offer testimony from participants of the Final

Pretrial Conference concerning their knowledge that the defendant's lawsuit arose from his

involuntary commitment after he made threats to kill judges during a visit to the VA in

Hicksville, New York.  See Civil Case ECF No. 120 at 2 (citing record).  In addition to providing

the fact finder with the background and context to understand the Civil Case in the manner

described above, this information is relevant to two elements of the charged offense.

        First, that defendant's Civil Case arose from threats to kill judges is highly

relevant for why the later threat at the Final Pretrial Conference in the Civil Case was understood

as a serious threat by those who heard it.  See United States v. Davila, 461 F.3d 298, 305 (2d Cir. 2006) ("[P]roof of the effect of the alleged threat upon the addressee is highly relevant"); United States v. McCrudden, No. CR-11-061 DRH, 2015 WL 1198544, at *5 (E.D.N.Y. Mar. 16, 2015) ("background or contextual information known by . . . the recipient of the threat may be considered").  The evidence will show that, based on their involvement in the Civil Case, the participants of the Final Pretrial Conference knew that the suit was prompted by a chain of events commencing with the defendant's violent threats at the VA.  That awareness was an important reason why those who heard the threat against the District Judge interpreted it as a serious threat rather than mere "hyperbole."  See Def.'s Mot. to Dismiss, ECF No. 33 at 2.  The jury should be permitted to understand this "highly relevant" factual context to assess whether the charged statement constitutes a "true threat" under Section 115.  Davila, 461 F.3d at 305.

Second, the violent threat at the origin of the Civil Case is also probative of the defendant's state of mind in connection with the charged offense.  See Garnes, 102 F.4th at 637 ("the minimum mens rea element required by the First Amendment in threat cases is recklessness," meaning that "a speaker is aware that others could regard his statements as threatening and delivers them anyway").  The jury can find that the fact that his Civil Case arose from a police response and involuntary commitment following an earlier threat at the VA should have placed the defendant on notice "that others could regard his statements as threatening." Id. In view of this history, the jury can reasonably find that his subsequent threat against the District Judge evidences the minimum mens rea required by Section 115.  See United States v. Linehan, 835 F. App'x 914, 916 (9th Cir. 2020) (affirming the admission of the defendant's prior threats as direct evidence of his intent).

In the alternative, the evidence of the defendant's prior threat at the VA is admissible pursuant to Federal Rule of Evidence 404(b) for a proper purpose.  See Fed. R. Evid. 404(b) ("evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident").  The violent threat at the VA, which prompted a police response and involuntary commitment at the NUMC, tends to show an "absence of mistake" or "accident" in connection with the charged threat against the District Judge.  The "close parallel" between the two threats against judges, underscores the relevance of the earlier threat in this prosecution.  See United States v. Gordon, 987 F.2d 902, 908 (2d Cir. 1993).

Finally, regardless of whether testimony concerning the violent threat at the VA is admissible as direct evidence or under Rule 404(b), it satisfies the requirements of Rule 403. Where the threat at the VA does not involve conduct "any more sensational or disturbing" than the charged threat at the Final Pretrial Conference, the probative value of the threat at the VA is not "substantially outweigh[ed]" by a risk of unfair prejudice.  See United States v. Roldan-Zapata, 916 F.2d 795, 804 (2d Cir. 1990) (finding that evidence admitted was not unfairly prejudicial where it "did not involve conduct any more sensational or disturbing than crimes with which [the defendant was charged.]").  The Court may mitigate any risk by providing a limiting instruction to the jury that the earlier threat is being admitted not for its truth but for the state of mind of the defendant and the effect of the listeners.

D.    The Court Should Admit Testimony Relating to Law Enforcement Reaction to The Defendant's Threat

The government seeks to offer testimony regarding the law enforcement reaction to the defendant's threat, including the USMS investigation and protective measures. The investigation included a review of the defendant's criminal history, law enforcement databases,

and public sources to assess whether the defendant represented a serious threat. This review alerted the USMS to two incidents that raised security concerns. The first was a prior threat in 2014, in which the defendant, following an adverse ruling in his pro se federal appeal, called the assigned pro se case manager and threatened to "get into a van and run over people from the court." The second was an arrest in 2023 after a road rage incident in which the defendant allegedly shouted, "I'm going to kill you," and stabbed another motorist in the arm with a knife.[3] The evidence will show that, having learned of this history, the USMS believed that the defendant posed an actual threat to the District Judge that needed to be mitigated. Accordingly, the USMS distributed a warning poster at the federal courthouse in Brooklyn, New York that included the defendant's photograph with instructions to notify the USMS if the defendant was observed entering the courthouse. USMS also enhanced the District Judge's security for a period.

The above-referenced investigation and protective measures are admissible as direct evidence of the charged crime because they are part of the factual "context" that the jury requires to determine whether the threat was a "true threat." Accordingly, such evidence is routinely admitted in threats prosecutions. See Hunt, 534 F. Supp. at 250 (permitting the introduction of evidence concerning "law enforcement's reaction to Defendant's alleged threats" as "relevant to the context of defendant's statements and the jury's determination of whether his statements constituted threats in that context"); United States v. D'Amario, No. CRIM. 06-112, 2007 WL 928473, at *4 (D.N.J. Mar. 26, 2007) (evidence that "the Marshal's Office . . . conducted the threat assessment" relevant to prove the threat); see also Davila, 461 F.3d at 305 (response to the threatening letter relevant to whether conduct constituted a threat).

---

[3] The case was resolved with a plea to disorderly conduct.

In the alternative, the proffered testimony (including concerning the discovery of the incidents) is admissible pursuant to Federal Rule of Evidence 404(b) in view of anticipated defense argument that a deficient or delayed response by law enforcement is evidence that the defendant's statement was not a true threat and/or that the defendant did not have the requisite intent when he made it.  See, e.g., Def.'s Mot. to Dismiss, ECF No. 33 at 2 ("the fact that Mr. Ward was arrested on August 22, 2024, more than a full month later . . . shows that there was no intent to threaten."); id. (describing the defendant's statements as "hyperbole").  In light of this defense, the proffered testimony should be permitted under Rule 404(b) for a proper purpose: to prove the defendant's state of mind and that the threat was understood as a true threat.  United States v. McCain, No. 21-2982, 2023 WL 2335332, at *3 (2d Cir. Mar. 3, 2023) (in a threats prosecution, in which the defendant "clearly put his intent in dispute," evidence of other bad acts was admitted properly "to meet the defense argument"); United States v. Zackson, 12 F.3d 1178, 1182 (2d Cir. 1993) ("Where a defendant claims that his conduct has an innocent explanation, prior act evidence is generally admissible to prove that the defendant acted with the state of mind necessary to commit the offense charged.").

Because the defendant's prior threats to "run over people from the court" (in 2014) and "to kill" a motorist (in 2023) were "sufficiently similar" to the charged threat to choke the District Judge to death, they are relevant to meet the defense argument.  Gordon, 987 F.2d at 908.  And, since the earlier threats are no "more sensational or disturbing" than the charged threat, testimony concerning the earlier threats should not be precluded by Rule 403.  Roldan-Zapata, 916 F.2d at 804.  Any concern regarding prejudice can be ameliorated by an appropriate limiting instruction.

E.    <u>The Court Should Admit Testimony of the Victim Regarding Her Fear of Civil Plaintiffs</u>

The government seeks to offer testimony from the victim, i.e., the District Judge, that she interpreted the defendant's statement as a serious threat based not only on the contents of the threat but also because of the defendant's status as a plaintiff in the Civil Case.  The District Judge had been a victim of past threats, but threats from criminal defendants who were detained or incarcerated did not instill as much fear as those from civil litigants who were not detained.  In this case, a threat from a pro se civil litigant inspired fear because the defendant was not detained and may have had an ability to carry out his threat.

The testimony of the threatened District Judge is admissible as direct evidence of the charged offense, <u>i.e.</u>, whether the defendant's statement was a "true threat."  <u>See, e.g.</u>, <u>United States v. Turner</u>, 720 F.3d 411, 428-29 (2d Cir. 2013) (rejecting appellant's argument that the district court erred in permitting the threatened federal judges to testify).  Moreover, as described above, the jury is also entitled to consider "the background or contextual information known by . . . the recipient of the threat."  <u>McCrudden</u>, 2015 WL 1198544, at *5; <u>see also</u> <u>United States v. Malik</u>, 16 F.3d 45, 50 (2d Cir. 1994) (affirming a Section 115 conviction where the "recipients' states of minds and their reaction" was "significant" evidence that "shed[ ] light upon the context of the alleged threats").  Here, the District Judge's familiarity with the defendant's <u>pro se</u> case and her prior experience facing threats from litigants is "highly relevant" to prove the charged threat.  Accordingly, the testimony of District Judge that she feared statements from the defendant more seriously than from a criminal defendant is relevant and admissible.

II.     <u>The Defendant Should Be Precluded from Introducing Evidence or Arguing that He Did Not Intend to Carry Out His Threats</u>

This Court should preclude the defense from introducing evidence or argument concerning the defendant's lack of intent to follow through with his threat to assault and murder the District Judge, his inability to have done so, or his failure to take any substantial steps. Such evidence is irrelevant.

Section 115 is not limited to threats a person intends to carry out. Instead, because violent threats create harms distinct from the physical harm of assault or murder, such as "fear of violence," the statute targets threats "even where the speaker has no intention of carrying them out." <u>Turner</u>, 720 F.3d at 420. As a result, a violation of Section 115 does not include any element concerning one's intent or ability to carry out the threats, as the defendant acknowledged in prior briefing. <u>See</u> Def.'s Mot. to Dismiss, ECF No. 33 at 2 (conceding that "there is not a requirement that an individual actually intend to carry out the threat"); <u>see also</u> <u>Turner</u>, 720 F.3d at 429 ("the speaker need not even have intended or been able to carry out the threat for § 115(a)(1)(B) to apply"). Absent such an element, evidence or argument concerning the defendant's lack of ability, intent, or preparation to choke the District Judge to death is not relevant. <u>See</u> Fed. R. Evid. 401.

Moreover, even if such evidence had any probative value, it would be far outweighed by the risk of confusing or misleading the jury about the legal issues presented by the trial. Any testimony or argument that the defendant lacked intent or ability to carry out his threat would confuse or mislead the jury by improperly suggesting, contrary to law, that this is an element of the charged offense in the manner of an inchoate violent criminal offense. <u>See</u> Fed. R. Evid. 403. Accordingly, in view of the substantial risk of jury confusion, such testimony and argument should not be permitted.

13

III.    The Defendant Should Be Precluded from Introducing Evidence or Arguing that He is Peaceful or Lacks Violent Tendencies

The Court should preclude the defense from offering evidence or argument that the defendant is a peaceful person or lacks violent tendencies, because such evidence and argument are irrelevant.  See Fed. R. Evid. 401.  The defendant's general tendency toward non-violence is not relevant to any element of the offense, which "focuses on particular statements by the Defendant and his intent in making those statements."  Hunt, 534 F. Supp. 3d at 252 (precluding "evidence of Defendant's violent or non-violent tendencies").  Any testimony or argument about the defendant's nonviolent tendencies would also present a risk of confusing or misleading the jury about the elements of the offense that the government must prove at trial.  See Fed. R. Evid. 403.

Should the defendant offer evidence or argue about his character for nonviolence, the government should be permitted to offer evidence of the defendant's tendency towards violence pursuant to Fed. R. Evid. 404(a)(2) ("if evidence" of the defendant's character trait is offered by the defendant, then "the prosecutor may offer evidence to rebut it"); see United States v. Krug, No. 1:15-CR-00157 RJA, 2019 WL 336568, at *6 (W.D.N.Y. Jan. 28, 2019) ("if defendant offers the anticipated character witnesses to offer opinions that defendant is peaceful, law-abiding or has integrity, or to testify as to his reputation in the community for the same, the Government would be permitted to present evidence, in the form of reputation or opinion testimony, that defendant is violent, is not law-abiding, or does not have integrity").  This evidence would include the record of the defendant's arrest for a violent assault in 2023 (discussed above) and evidence of the defendant's arrest for criminal possession of a firearm in 2024.

14

IV.    The Court Should Preclude the Defendant from Presenting Evidence or Arguing About
His Purported First Amendment Right to Make Threats

The Court should preclude the defendant from presenting evidence or making
arguments referencing any First Amendment right to make threats against a federal judge.  As
the Court observed in denying the defendant's motion to dismiss, it is "axiomatic that the First
Amendment does not protect 'true threats' of violence," Mem. Op. & Order, ECF. No 34 at 5.
See also Garnes, 102 F.4th at 636-37 (citing Counterman, 600 U.S. at 74 ("'true threats'
constitute a category of communication that falls outside of the protective scope of the First
Amendment").  If the jury determines that the threat met the elements of the offense, then it is
not protected by the First Amendment.  See, e.g., Turner, 720 F.3d at 421-22 (defendant's
statements that the judges "should be killed" were not constitutionally protected).

Because the relevant First Amendment protections begin and end with the
question whether the government proved the elements of the offense, the defendant should be
precluded from presenting evidence or making arguments about any alleged First Amendment
right to make the statement charged in this case.[4]  Legal argument about the First Amendment
can serve only to confuse the jury and invite the misapplication of the law.  See Fed. R. Evid.
403.  Accordingly, the government respectfully requests that any arguments or references to the
defendant's First Amendment right to make a threat be precluded.  See United States v. Segui,
No. 19-CR-188 (KAM), 2019 WL 8587291, at *14 (E.D.N.Y. Dec. 2, 2019) (precluding
evidence, arguments, and testimony referencing the defendant's First Amendment right).

---

[4] The government does not seek to preclude the defendant from arguing that the threats are
not "true threats" or that he did not have the requisite intent demanded by the statute.

V.    <u>The Court Should Preclude Evidence and Argument Concerning Health, Illness, or Misfortune</u>

        The Court should preclude any evidence or argument concerning the defendant's health, medical diagnosis, or misfortune afflicting him or a member of his family.  Such evidence or argument is not relevant to the charged offense and should be precluded to avoid improperly appealing to sympathy.  Fed. R. Evid. 403, Adv. Comm. Notes (courts have broad discretion to exclude evidence if it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one").

        The defendant has raised his health conditions and symptoms in prior proceedings and court filings.  <u>See, e.g.</u>, Def.'s Bail Mot., ECF No. 16 at 6 ("Mr. Ward is additionally a victim in both attacks on the World Trade Center . . . These have both likely contributed to Mr. Ward's health problems."); <u>id.</u> ("Mr. Ward is a victim of the groundwater contamination at Camp Lejeune, where he was stationed while in the Marines."); <u>id.</u> ("Mr. Ward has a number of health problems"); <u>id.</u> (describing the health condition of the defendant's significant other). Absent a pretrial ruling, the government anticipates that the defendant may place these circumstances before the jury.

        There is no probative value of evidence or argument concerning the defendant's health condition or that of his significant other, as it is not relevant to any of the elements of the charged offense and should be precluded under Rule 401.  In addition, the evidence should be precluded under Rule 403 since it has "potential to engender sympathy in an inappropriate effort to excuse defendant's commission of the charged offences." <u>United States v. Miller</u>, 641 F. Supp. 2d 161, 167 (E.D.N.Y. 2009).  <u>See also</u> <u>United States v. Sterritt</u>, No. 21-CR-193, 2023 WL 7386660, at *5 (E.D.N.Y. Nov. 8, 2023) (excluding evidence of defendant's "personal, health, or family circumstances" because it "carrie[d] too great a risk of unfair prejudice, confusing the

issues and misleading the jury"); United States v. Washington, No. 21-CR-603, 2023 WL 6219203, at *10 (S.D.N.Y. Sept. 22, 2023) (precluding evidence of "family background, health, age, or any other similar factors" because "[s]uch evidence is generally irrelevant to any issue of consequence").

VI.    The Court Should Preclude Evidence and Argument Concerning the Defendant's Possible Punishment

The Court should preclude evidence or argument regarding possible consequences the defendant may face if convicted because it is not relevant. While the defendant has not suggested he intends to introduce any discussion of these facts at trial, out of an abundance of caution, the government moves to preclude at trial any discussion of the defendant's possible punishment or collateral consequences of conviction. The defendant's punishment is not "facts of consequence" to be determined at trial. See Fed. R. Evid. 401. Therefore, any evidence of those issues is not relevant. See Shannon v. United States, 512 U.S. 573, 579 (1994) ("Information regarding the consequences of a verdict is . . . irrelevant to the jury's task"). Indeed, jurors are routinely instructed not to consider a defendant's punishment in determining a defendant's guilt. Id. (a jury "should be admonished to reach its verdict without regard to what sentence might be imposed [and] not to consider the consequences of their verdicts . . . ." (internal citation omitted)); United States v. Blume, 967 F.2d 45, 49 (2d Cir. 1992) ("Federal courts usually instruct juries not to consider a verdict's consequences"). Accordingly, such evidence or argument should be precluded.

<u>CONCLUSION</u>

For the foregoing reasons, the government respectfully requests that the Court

grant the government's motions <u>in</u> <u>limine</u>.

Respectfully submitted,

JOHN J. DURHAM
United States Attorney

By:    <u>/s/ Leonid Sandlar</u>
Leonid Sandlar
Trial Attorney
(718) 254-6879

cc:    Clerk of Court (JPC) (by ECF)
Dawn Florio, Esq. (by ECF)
Declan Murray, Esq. (by ECF)